The next case will be 06-5048 Night Vision Corp v. United States.  Thank you, Your Honors. Good morning, Your Honors. May it please the Court, I'm Steve Novak on behalf of the Plaintiff Appellant, Night Vision Corporation. Your Honors, what happened in this case is exactly what the SBIR laws were designed to prevent. Here's what happened. Through SBIR phases 1 and 2, the Plaintiff, which is a small, three-person company with no governmental connections, developed for the Air Force the first truly safe night vision goggle, and in the process, double peripheral vision. In the Air Force's own words, a revolution in night vision goggles. But then, Your Honors, when the government decided to take advantage of the Plaintiff's technology and to move on to the production stage, it threw Plaintiff to one side and instead gave the profitable follow-on production contract to Inside, a much larger and influentially connected contractor. But to prevail in your argument, you have to convince us that there was a breach of either a written agreement or an oral agreement. Is that correct? That is correct, Your Honors. Now, it would help me if you could tell me precisely, and as I understand, you agree that in the first two phase agreements, there was no explicit commitment that they would get the third. But I gather your argument is that there was incorporated by reference in these first two agreements a statutory provision which required it. And what is that statutory provision? Is it 15 U.S.C. Section 638J2C, Your Honor? I don't see that that provision helps you very much because all that provision requires is that the administrator to modify policy directives. And there's no claim, I take it, that the administrator didn't modify the policy directives. Your claim, as I understand it, is that he modified the policy directives, but then the Air Force didn't comply with those policy directives. Isn't that your basic argument? Well, certainly the Air Force did not comply with the law, did not comply with either of the... Well, you said with the law. That's where I... Okay. What law? Let me address that directly. The statute that I just cited requires the SBA to create policies to ensure, ensure is the word that's used in the statute, that SBA developers get Phase 3 contracts on two conditions. One, that a Phase 3 follow-on or any kind of a follow-on is actually pursued by the government. And secondly, that it's practicable to do it with a SBA developer. It says to ensure to the extent practicable, so it's not an absolute commitment. Well, no, but the word practicable is an objective word. We cited cases from both this and other circuits that practicable means, in this kind of a context, it places, I should say, on the government an obligation to negotiate in good faith, to explore in good faith, and to make reasonable arrangements with the SBA developer. If it is impossible to do, we would agree. We don't have that right. But practicable does not mean discretion. If it meant discretion, then we'd have a situation, a statutory regime, that says the SBA developer must get this. We're ensuring that the SBA developer get it, but only if the government wants to. That would undermine the whole schematic. Well, what you have basically here, I take it, is two conflicting policies. On the one hand, there's a policy to try to help small business. On the other hand, there's also a policy giving the Air Force some discretion in how it's going to enter into its contract. Do you contend, by the way, that the agreement that the Air Force ultimately entered into was a Phase III agreement? Well, it wasn't technically Phase III, because the SBA developer wasn't awarded it, but it was a follow-on contract that extended and utilized the technology that the SBA developer brought forth. As I understand what your argument basically is, once your client successfully completed the first two phases, the Air Force had no choice but to enter into a Phase III agreement with your client. Is that basically your argument? It's close, Your Honor, but if I, with all respect, could just slightly modify it. You're right if the Air Force decided to use the technology and utilize these night vision goggle technology. The Air Force, by the way, could be free to say they don't want to do it. If for some reason they don't want this pilot safe, that's their business, I guess. It's a shame, but it's their business. But if they decide to use this technology, then yes, they must do that with the SBA developer that brought it in the first place. That's the whole point, and Your Honor is focused that this is to help small business. With all respect, this helps the government because it allows the government to take advantage of the innovations that small business entrepreneurs bring to the table. Today, the Air Force does not have a safe night vision goggle. That's a tragedy. They had it with our client's technology, and all they had to do was let us complete the job, and the pilots would have a safe goggle. But your client did not have facilities to do the job, did it? Well, Your Honor, our client was not a manufacturer. It's in the evidence. It's in the record. Had two manufacturers on tap who could have done it. They could have done it. The Air Force wanted it to be this inside organization for whatever reason. Well, let me state it a little differently. The Air Force apparently was of the view that it wanted to get, as a manufacturer of this product, someone who had production facilities. Well, that's logical, and plaintiff agrees, but it did not have to be inside. There's no requirement, and there's no, with all respect, there's no ability that the Air Force gets to dictate who that subcontractor is. As long as plaintiff picks a subcontractor that's legitimate, legal, and can do the job, the Air Force can't dictate who the subcontractor is. So, Your Honor, you're right that one of the grounds would rely on... Well, but you say the Air Force can't dictate who the subcontractor would be, but the Air Force, I presume, could say to somebody, we'll award you a contract, but on condition that the Jones Company not be a subcontractor. Couldn't the Air Force do that? Perhaps, if there was no either implied contract, and I want to get to that in a second, or statutory schematic that said they couldn't do it, I guess they could. But this statute says that, and ensures, that the SBIR developer gets it, and the government cannot blackball or do the opposite with respect to the subcontractors, long as it is practicable. But, Mr. Novak, was there a Phase III proposal submitted by Night Vision? There was not, Your Honor, and the reason for that is severalfold. One, they were discouraged from doing it. Number two, they were told, don't do it unless you include Insight, which it did not want to do. Insight was not doing the job, and so it didn't want to use that. The legal counsel for the Air Force announced at a meeting, I got an idea. Let's tell them to submit the Phase III award, and then let's deny it. So there's a complete excuse for not having submitted that. But now you're complaining. Isn't the complaint that you're basing the entire suit on, the basis that the Phase III was not granted to Night Vision? So how can you get to Phase III without submitting a proposal? Because the government we submit materially breached both the implied contract and the express contract when it walked away from the SBIR Phase regime and said instead, and by the way, we say it's a pretext and our evidence must be accepted on summary judgment, that was phony. This open competition was a joke. The only entity in the country besides us that knew what our data was was Insight. Now, what did they breach? The first or the second? I want to answer that. We have two theories. They said they breached the contract, but what contract did they breach? They breached an implied-in-fact contract that we proved, or at least we raised an issue of fact, and I wanted to get to that. Implied-in-fact contract what? That if the government decided to use this technology, it would do so by awarding plaintiff a Phase III contract. This court has repeatedly enforced implied-in-fact contracts with the government. All that needs to be shown is a tacit understanding. We don't have to satisfy the formalities that goes with it, and we produced in the record a mountain of evidence that at least, at the very least, raised an issue of fact. Let me just summarize very quickly. There's four categories. But your theory then is that if they complete Phase I and Phase II, Phase III is automatic. That's our alternative theory. We have an express contract theory, which incorporates the statute that says that. But if we fail in that, if the court decides we didn't succeed in that, our alternative argument is an implied-in-fact contract. And we raised four types of evidence on this. One, written admissions by the Air Force. The contracting officer wrote down, plaintiff was promised a Phase III along the way. She even said that the legal counsel, Debbie Muldoon, agreed with that. We have the testimony from two officers of the plaintiff that repeatedly the oral statements were, you're guaranteed to get the Phase III, you've got to get Phase III, when we do the Phase III, when plaintiff gets the Phase III. Third, look at the Air Force's conduct in at least three ways. Number one, the Air Force insisted that we get a manufacturer in place in Phase II. We didn't need a manufacturer in Phase II, Your Honor. We were able to produce those 12 prototypes on our own. The Air Force said, you've got to have a manufacturer in Phase II. You know why? To prepare for Phase III. Because you're getting Phase III, you better have your manufacturer in place. You may want to just wrap this up and get these points out quick. You're in your rebuttal time. I'll be back. Unless I can finish that answer. I'll finish your answer. Let me finish the answer. Then the second one was when the government insisted that we sign the MOU with Insight, saying that Insight gets the 7,000 productions. That can only happen in a Phase III 7,000 units. And why would we be the ones granting Insight that right unless we had the Phase III? And then the final one on that, the conduct by the Air Force, the Air Force came to us and said, assign, sell your Phase III rights, rights in Phase III to Insight because we'd rather deal with Insight. If we didn't have rights, nobody would have asked us to sell them. Thank you. Thank you. Mr. Chadwick. Please support. This was a more complicated case in the trial court, and we've heard snippets this morning of a lot of those complications. But there are only two counts on appeal here. The written contract count appears on page 106 of the administrative record. It's called breach of contract, wrongful refusal to award Phase III to Night Vision. That's an allegation that there was a breach of the written Phase II contract. The Phase II contract is mentioned all through that count. One of the things we said in our brief, which has been confirmed this morning and which was confirmed by the amicus brief filed in this case, is that at best the argument of Night Vision is some sort of statutory argument, that the Air Force was not entitled not to go to Phase III, was not entitled to do what it did, which was to issue what's known as a PRDA, a Program Research and Development Announcement, open it up to competition in which Insight and Night Vision and a third company, Litton, competed, that the Air Force wasn't allowed to do that. Now you could have made that statutory argument, and obviously we would have argued against it, we don't think it'd hold to water, but that statutory argument could have been made, if ever, as a pre-award protest of that competition. Night Vision could have come in and said, look, no, under the statute, you're not allowed to do this, you haven't followed the procedures that the Small Business Administration has set up. But they did make a pre-award, they did protest it, and they lost on that before the Court of Federal Claims, and they haven't challenged that here. Yes, but it was a, my point is, it was a completely different protest. That was a post-award protest of the award in the competition. The argument not being in that count five of the First Amendment complaint. I see, you're saying they should have made a pre-award protest to putting it out to competitive bidding at all. Right, and obviously we don't mean to invite that sort of thing, but my point is, what you have is a statute, 638J, that says the Small Business Administration shall put in place procedures, and that you have procedures issued in the policy guidance by the Small Business Administration, which the argument here this morning, and throughout the case, has been that the Air Force didn't comply with those. Assume the Air Force didn't comply with those. It's still not a breach of the Phase II contract. It's not a breach of the Phase II contract, because the statute, what does the statute say? The statute says the Small Business Administration shall put in place procedures. If Congress had wanted to say there shall be in every contract a term saying that you've breached Phase II if you don't follow the procedures for Phase III, it could have said that. Obviously it didn't. The Small Business Administration didn't say anything like that either. The Small Business Administration set forth procedures, which, you know, if it were relevant, we could have come in and said, had they been challenged, we could have shown how the Air Force complied with them. That sort of pre-award protest was never raised. There is simply no connection. There's no breach of the Phase II contract. The Phase II contract admittedly doesn't say in so many words that you shall award Phase III under the proper procedures, or else you've breached Phase II, and it doesn't make any sense. An incumbent government contractor who is unhappy with the competition for a follow-on contract can't allege a breach of its contract, saying, well, all laws are incorporated into my contract. That includes the laws governing the follow-on solicitation. If we're breached... Well, certainly they know what it suggests, that all laws are incorporated into the contract. I mean, certainly if the government contended that in performing Phase I and II they hadn't fully reported their income, I don't suppose the government, instead of suing them for what they owed under their income tactics, could sue them for a breach of contract saying we were a third-party beneficiary of an implied provision of the contract that you would pay the taxes that you owed. Well, that's obviously a fair point. It has to relate to the incorporation by reverence. It has to relate to something relating to the contract. And that's what the trial court quite properly said. It said that, yes, sure, as a general principle, it's often said that the existing law is incorporated, but it has to be law that would relate to a term of the contract and help interpret or carry out a term of the contract. There's simply no connection. The second claim that's at issue, the count that's at issue, is Count III. It appears at page 108 of the Joint Appendix. And this count was breach of oral contract to award Phase III. That's the count to which we responded on summary judgment. And we said not only have the contracting officers that there were two... There was one to which Night Vision pointed specifically. There was another contracting officer involved. Both of them said we didn't enter into any agreement of that kind. We didn't even have to say that. What we really said was you don't have any evidence on your side. No one can say at any point in time, when was it? Approximately when did these negotiations occur? Who from Night Vision's side exactly was there? Where was it? When did this meeting of the minds take place in this oral contract? When did it happen? There's no evidence of anything of that kind. What Night Vision has is a classic example of what this court called in DNN Bank, the classic cloud of evidence that could be consistent with a contract if there were, in fact, any evidence of a contract within there. Night Vision's arguments in its brief essentially are, well, we have a much thicker cloud than any of these other plaintiffs have ever had. But that simply doesn't do it. What do you say to the argument that your opponent made toward the end of this presentation that what he's really saying here, there was an implied in fact contract, there was an understanding that if they properly performed phases one and two and the government accepted what they had produced in those phases, it would give them a phase three contract. That seems to me to be their strongest argument. A couple things. First, that's not what count three says. Count three is about breach of oral contract that was filed. That First Amendment complaint was lodged in that. Is there anything in the complaint that speaks about an implied in fact contract? Not at all. Not at all. There are five counts, and the one that relates is the alternative count to the breach of the written phase two is called breach of oral contract, to award phase three. I suppose the oral contract could be an implied in fact contract. Going to that, let me speak to that then. You still need an implied in fact contract authority on the part of the government to enter into this kind of contract, and you need evidence that there was a meeting of the minds, not a promise. The evidence read in favor of Night Vision here is that they were promised, they were assured that phase three would occur. Even if a contracting officer, this court has plainly said, even if the contracting officer who would be the person signing the next contract assures you you're going to get it, I'm the one. That's not an award of a contract. Contracting officers are not simply free-roaming agents of the government who go around saying, oh, I promise you this. I suppose while the contracting officer has the authority to sign the contract and to modify the contract, the contracting officer has no authority to decide who's going to get the contract. Well, that's true, too. Obviously, that is decided by a separate team. I suppose by the same reasoning, the contracting officer has no authority to tell somebody, if you do A and B, you'll be awarded C. That's really no more than saying, it's my belief that if you do A and B, my superiors will do C. Well, in the context, yes. But even if the contracting officer believed it meant more than that, it doesn't. But certainly here we also have testimony that no one intended to make any sort of agreement. There's no evidence from controverting that from night vision saying that they actually heard the terms of an agreement, an offer, an acceptance. There's no evidence of that in the record. So there's no authority. That also goes to the other points, though. It's not reasonable to think that anyone would have understood, given this lack of authority, that there could have been a binding contractual meeting of the minds during Phase 2 that there would be an award of a Phase 3 contract. Contracting officers can't make awards. Can't just simply go out on the street and say, I work for the government. I'm a contracting officer. I have an unlimited warrant. I'm going to make a contract with you on the street. It's pursuant to agency procedures they sign the contracts. The other cases in which there have been implied and in fact contracts clearly arise in a situation where a contracting officer has administered a contract and has been awarded or is empowered to award a contract by agency procedures and an implied and in fact contract arises. But I suppose it's up to the Air Force to decide whether when they are going to negotiate and let a particular contractor produce stuff, as distinguished from a research and development contract, to decide whether they're going to negotiate with one party or put it out to competitive bidding. Well, yes, to an extent. I mean, it is true that there are procedures that are called guidance. Frankly, there's no case law. Their status is a bit ambiguous. But there are procedures that the Small Business Administration has set forth that you're supposed to go through with respect to Phase 3 awards. And you, in fact, don't have to do another competition. The Small Business Administration has said awarding Phase 1 and 2 is sufficient competition. If you want to go to Phase 3, you don't have to let it out. And there are procedures. If you decide not to do it, you're supposed to tell the Small Business Administration. There are procedures there. So there are some. It's cabined to an extent. But what happened here was, you know, certainly there was on its face a decision to go to competition, which on its face is reasonable. And it wasn't protested at the time when it could have been protested. It's certainly not a breach. Certainly the Small Business Administration can't tell the Air Force to whom to award a contract for the procurement of military equipment. No, but to be fair to Night Vision, I don't think that's what they're alleging. I think Night Vision is saying that the Small Business Administration's procedures, incorporating these words, you know, if practicable or as appropriate, Night Vision's claim is that they could show, if they were given a chance, they could show that they should have satisfied that standard in Phase 2, and that, therefore, because they actually satisfied the standard, and here's where the line breaks, that there was somehow a breach of the Phase 2 contract. That doesn't follow at all. Arguably, maybe, there could have been a statutory argument buried in there. Basically, I tell you what it comes down to is that you say that Night Vision may have had a hope, perhaps even an expectation of getting the Phase 3 contract, but it didn't have any contractual right to do so. It didn't, and because, and we don't just say that. More importantly, on summary judgment, we're saying not just that that didn't occur, but there isn't evidence in this record, which is the proper standard of summary judgment. Once we challenged the existence of the elements of the contract, it was Night Vision's obligation to come forward and say, here's the offer, here's the acceptance, here's why the person had the authority to do it, here's the consideration, and then those elements are simply not in the record. There's no such conversation, or certainly on the issue of authority, which we've spent some time on in our brief, certainly that major point is nowhere to be found. Thank you. Thank you. No back? Thank you, Your Honor. Judge, we have much more than a hope and an expectation. We had two things. We had a promise in an implied-in-fact contract, and we had a statute that said it, which was incorporated by reference into the written contract that we had. We did not use the label implied-in-fact contract in the complaint, but no matter, the elements, this Court knows this, the elements of an oral contract and an implied-in-fact contract are the same. If anything, it's less burdensome to prove an implied-in-fact contract. Everybody briefed it as an implied contract. The lower court judge's opinion used the phrase implied-in-fact contract throughout. An implied-in-fact contract does not have to be expressed. There does not have to be an express offer and acceptance. The courts say all you need is a tacit understanding, proven not just by the words, even if the words alone are not enough, the courts say conduct can do it. And I direct two of the judges, at least, to the schism. What did you say made the commitment on behalf of the government? Was it the contracting officer? Contracting officer Judy Demas and project managers Craig and Brown. All three of them did through their words and, more importantly, through their conduct. And all of this in a context. Remember, what the courts say is you look at the circumstances and the context for implied-in-fact contract. What is the context? The context is a statutory regime that has three phases that says do first two correctly, and if the government goes to three, the only person in the world that can get phase three is the CBR developer. Demos interdeposition said that's the philosophy of CBR. That's who gets the award. And so if you put it into the context of the statutory regime, look, the CBR laws were designed to prevent what happened here. What would have been happening is that the government seduces the small business innovator to come forward and give the technology away and then gives the real deal contract to a big contractor. That's exactly what happened in this case. Exactly what happened in this case. It frustrates the statute, which is incorporated in the contract, and it's in direct violation of the agreement that was made. And who was the agreement made by? The contracting officer. This court's opinion in L.G. Timbers says that a contracting officer, by definition, has the authority to bind the government in contracts. That's what the title means, and unless there's some limit on that that is published, and there is none here, there's never been a suggestion of that, that binds it. Mr. Novak, how do you reply to the government's position that it could have filed a pre-award complaint? We absolutely could not. I'll tell you why we couldn't. We didn't know that they were going after the same technology. That purdah was gerrymandered in a bunch of ways. One way it was gerrymandered, it said, bring us a new and improved goggle, not the one that we've been working on called PMVG. Well, if they're going to, I said at the beginning, if the government doesn't want our technology, we can't force it to use it. So it was asking for something different. So since we didn't know that they were using our technology at the time, we discovered it in August of 2001, two years later. That's when the government first published the submission that Insight had made. And what was in that publication, the submission? Our goggles. People have been trying to solve this problem for the Air Force for 30 years. Our guy solved it by two things, four channels, lenses, and folded optics. That's what was in the proposal that Insight submitted, but we didn't learn it until August of 2001. It was too late to protest at that time. Their contract had been awarded for almost two years, performed for two years, the money spent for two years. Our only remedy is this court for money damages. That's all we're left with. We had a statutory right, we had an express contract right, we had an implied contract right. We didn't get anything. We have no warrant, and we don't have a customer. There's only one game in town for night vision goggles for the military. It's the United States government. All right, sir. Thank you. Thank you, Your Honor. Case is submitted.